# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL RADLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 4:21CV1039 HEA |
| | ) |
| UNUM LIFE INSURANCE COMPANY | ) |
| OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

Defendant has filed its Motion for Partial Summary Judgment as to Count I, [Doc. No. 20]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion is granted.

### Facts and Background

Plaintiff's Complaint alleges the following:

On May 4, 2016, Plaintiff, while running, tripped and hit his head on the concrete sidewalk. While Plaintiff admits he lost consciousness, he initially chose not to go to the hospital.

Four days later, on May 8, 2016, Plaintiff began to experience an increase in symptoms related to his fall. He experienced dizziness, difficulty focusing,

headaches, a "buzzed" or drunk feeling, and developed sensitivity to noise and light. His vision became blurred, and he began to experience slanted vision. He last drove a vehicle on May 8, 2016. Plaintiff's last day of work was on August 15, 2017.

While at work on May 9, Plaintiff began experiencing the same symptoms from the previous day in addition to slurred speech, stuttering, and a staggering gait. Due to these symptoms, he allowed his co-worker, Alexis Webb, to drive him to the St. Luke's Emergency Department. At St. Luke's ER, Plaintiff was diagnosed with a post-concussive syndrome.

On August 15, 2017, Plaintiff was admitted into Mercy Hospital after another symptomatic episode. There hospitalist Ryan Kroeger, and neurologist Dr. Logan, diagnosed Plaintiff with conversion disorder.

Conversion disorder has been defined as a mental condition in which a patient shows psychological stress in physical ways. The disorder is most often seen in women and people who have had a previous psychiatric diagnosis. Plaintiff does not have a previous psychiatric history outside of two or three counseling sessions.

On August 21, 2017, Plaintiff was sent by his primary care physician to St. Luke's hospital for further evaluation and a second opinion. Plaintiff was again diagnosed with a conversion disorder. Plaintiff was not prescribed any psychiatric

[2]

medication because the psychiatrist felt he did not exhibit any psychiatric or behavioral disorders.

Plaintiff's last day of work was August 15, 2017.

Plaintiff began receiving Long Term Disability benefits effective November 14, 2017, due to cognitive symptoms and relating impairment resulting from a conversion disorder. On May 12, 2020, Unum sent a denial letter discontinuing the payment of Plaintiff's LTD benefits, stating that he had exhausted the 24 months of benefits payable for mental illnesses under the Plan.

 On November 10, 2020, Unum received Plaintiff's timely appeal of its adverse determination of Plaintiff's LTD benefits. Plaintiff submitted medical records dating from his fall in 2016 to present from twelve different physicians and four hospitals. All of which outlined the treatment and care Plaintiff received and was receiving for his persistent and increasingly debilitating symptoms.

Throughout his medical treatment, the medical records reflected that Plaintiff's symptoms progressed in severity. His original diagnosis of a conversion disorder has been called into question by treating physicians.

Plaintiff completed physical therapy, occupational therapy, and speech therapy to alleviate his symptoms with little to no results. To date, Plaintiff is still experiencing an irregular gait and has difficulty keeping his balance when ambulating, so he must rely on a walking cane. He has to "focus" on his walking,

even if these walks are only of a short duration. He has continued to have dizziness that he describes as a buzzed or drunk feeling and speech problems that include stuttering, slurring, and word-finding difficulties. He experiences various physical ticks and headaches that become worse in environments with bright lights, loud sounds, or situations in which he needs to concentrate. He reports intermittent left-sided numbness and that it takes him longer to process conversations because his memory of auditory material is low. Plaintiff has described that he has developed a "short-fuse" since the accident and quickly gets irritated or frustrated. He states that anything he does taxes his body, which has led to constant fatigue.

Plaintiff's negatively progressing symptoms have prompted his current medical providers Dr. Catherine Radakovic, Dr. Mark Scheperle, and Dr. Joseph Yazdi, to re-diagnose his condition from a conversion disorder to a delayed post-concussive syndrome. Plaintiff's current treating physicians opine that there is a physical cause to Plaintiff's disability, instead of a behavioral issue.

Dr. Yazdi specifically highlights an EEG positive for left temporal slowing that would suggest a brain injury and visual testing done by Dr. Catherine Radakovic that supported Plaintiff being diagnosed with a visual disability.

As pointed out by Dr. Timothy Leonberger, diagnostic tests of Plaintiff's brain show a cyst located near Plaintiff's cerebellum, which is the part of the brain

that is responsible for coordinating voluntary movement, balance, coordination, and posture.

Despite Plaintiff's treating physicians determining that conversion disorder is an improper diagnosis, Unum reviewing physicians have disregarded these reports. Unum reviewers instead continue to conclude that Plaintiff's fall in 2016 has led to a series of "exaggerated" ailments that, by definition, are all in his head. They further conclude that these conditions cannot preclude him from his ability to return to his regular occupation demands. Based on Plaintiff's medical records, the 2016 fall most likely aggravated these physiological defects and caused damage to Plaintiff's brain, which in turn, is now manifesting the debilitating physical symptoms from which he suffers.

Plaintiff submits for Unum's review an Independent Medical Examination (IME) performed by Dr. Joseph Yazdi, a board-certified neurosurgeon. After examining Plaintiff and reviewing the medical records, Dr. Yazdi concluded that Plaintiff's evaluating doctors should have never found him exhibiting any psychiatric problems that could result in a conversion disorder. He believes that the 2016 fall was the dominant factor causing Plaintiff's head injury. Dr. Yazdi concluded that Plaintiff is experiencing a post-concussion syndrome, and it is of his opinion that Plaintiff's deficits are permanent.  This report also concluded that Plaintiff has reached maximum medical improvement (MMI). Based on the totality

of the medical records, Dr. Yazdi found Plaintiff to be permanently and totally disabled.

In their denial letter, Unum argues that Dr. Yazdi's IME should be disregarded because, in part, Dr. Yazdi has treated Plaintiff in the past, creating a conflict of interest. As part of their regular practice, Unum hires for employment medical reviewers associated with the corporation to review a Plan's participant's medical files, creating a conflict of interest.

On June 6th, 11th, and 19th of 2020, Dr. Timothy Leonberger performed an Independent Neuropsychological Evaluation of Plaintiff.  The exam was proctored over a three-day period because physically, Plaintiff could not handle anything more extensive. In Dr. Leonberger's evaluation, he ruled out exaggeration and malingering for secondary gain through a series of validity measures, including the Rey 15-Item Test, the TOMM, and the validity indicators on the MMPI-2. Testing revealed Plaintiff had an average range of intellectual ability, consistently average verbal and language abilities, an average visual memory, and a high average score on executive and cognitive functioning.

Physically, testing revealed that Plaintiff performed at an:

a. extremely low and borderline range for psychomotor speed and information measures;

b. borderline range in testing areas that required concentration, visual

    scanning, and cognitive flexibility;

    c. extremely low to borderline range across several motor speed, coordination, and

    d. extremely low range on measures of fine motor speed.

Dr. Leonberger concluded that the symptoms produced by Plaintiff were not psychologically based and did not meet the criteria for a conversion disorder. As a result, Dr. Leonberger diagnosed Plaintiff with an unspecified neurocognitive disorder (post-concussive syndrome), unspecified Tic Disorder (focal and motor), and unspecified depressive disorder.   Based on a reasonable degree of neuropsychological certainty, Dr. Leonberger's opinion of Plaintiff is that he is disabled and cannot perform all the material duties of any occupation for which he is reasonably suited by virtue of his training, education, or experience.

Unum disregards Dr. Leonberger's opinion because the results are inconsistent with neurological testing performed in December of 2017 by Unum's neuropsychologists.

The June 2020 testing reflects improvements in memory function while showing a decline in psychomotor speed and fine motor function. Reviewers concluded the above inconsistencies were unexplainable.

Despite this conclusion, Unum reviewers accepted inconsistencies about Plaintiff's current level of personality functioning. Specifically, Unum reviewers

[7]

accepted the June 2020 testing results that showed Plaintiff had an increase in mental health concerns compared to the 2017 testing.

By denying any increase in neurological issues but accepting the increase in mental health concerns, Unum's consulting neuropsychologists concluded that Plaintiff's medically documented increase in stuttering, motor tics, and other such symptoms were psychogenic rather than neurological.

On October 16, 2020, Plaintiff underwent an independent vocational assessment through Delores Gonzalez, a certified vocational rehabilitation professional. Based on the national economy, Ms. Gonzalez determined that Plaintiff's occupation best coincided with a Hospital Administrator, which she described as sedentary level work based on the Dictionary of Occupational Titles (DOT). As a result of Ms. Gonzalez's review, it was deemed that Plaintiff did not have transferable skills due to his significantly reduced residual functional capacity. From a vocational perspective, Ms. Gonzalez stated that it was not reasonable to expect an employer to hire an individual with Plaintiff's physical disabilities and conditions over a younger worker who would not have to be accommodated. She concluded that the physical symptoms Plaintiff exhibited in and out of the interview would significantly hinder him in the job market, especially in a clerical or sedentary-type work environment.

Additionally, Ms. Gonzalez observed that Plaintiff experienced significantly impaired attention and concentration that all jobs, including unskilled labor, would require. Overall, she opined that Plaintiff's ongoing symptoms, and the totality of the circumstances would make securing and maintaining work in the open labor market difficult, "if not impossible." Therefore, Plaintiff could not be a candidate for vocational rehabilitation, as he is not capable of any competitive work due to the May 2016 incident.

Despite being certified in vocational rehabilitation and counseling, Unum reviewer would not consider Ms. Gonzalez's observations because she was a non-medical expert. Unum stated that in its review, Ms. Gonzalez's vocational opinion had been fully considered but did not clarify how.

Unum Benefit's center deemed Plaintiff's occupation to be most consistent with a Practice Manager. While the classifying occupation was different from Ms. Gonzalez's, it agreed there was no physical difference in demand between the two classifications.

Disregarding Ms. Gonzalez's report, Unum ultimately decided that the physical and non-exertional demands of Plaintiff's regular occupation, as it was normally performed in the national economy, remained unchanged, and Plaintiff was able to perform sedentary work.

Plaintiff has submitted objective medical evidence to Unum that his multiple health conditions' effects and symptoms result in restrictions and limitations that prevent him from performing the material duties of any occupation.

Plaintiff brings Count I against Unum under the Employee Retirement Income Security Act of 1974, ("ERISA"), § 502(a)(3), 29 U.S.C. § 1132(a)(3). Plaintiff alleges that in terminating benefits under the Plan, Unum acted as a fiduciary in the administration of his claim, failed to adequately consider the facts and circumstances regarding his claims, failed to adequately investigate the facts supporting his claim, and relied on biased reviews of Plaintiff's medical conditions in terminating benefits.

In his appeal, Plaintiff sent in additional information to aide in the review of his appeal.

In response to Plaintiff's appeal, the February 5, 2021, denial letter indicated that Unum had generated additional evidence during the appeals process to aide in making an adverse appeal determination. This additional evidence was not disclosed to Plaintiff for comment.

Defendant moves for summary judgment on Count I. In support of its motion, Defendant has submitted a Statement of Uncontroverted Material Facts. While Plaintiff only objects to each fact because the facts upon which the statement relies is based on the Declaration of Kurt Phillips, which is not part of

the administrative record, Defendant correctly counters that the Declaration is merely sets out the location in the record of the facts. As such, Plaintiff's objections are overruled, and the Court finds the following uncontroverted material facts:

In connection with his employment at United Skin Specialist, LLC, Plaintiff was a participant in the employee welfare benefit plan referenced in his Complaint in this case.

On August 25, 2017, Unum Life received Plaintiff's claim for disability benefits, which was signed by Plaintiff and dated August 23, 2017.

Unum Life approved Plaintiff's request for long term disability benefits on March 12, 2018, on the basis that he was unable to perform the material and substantial duties of his regulation occupation due to his medical condition of conversion disorder, a mental illness.

On November 9, 2018, Unum Life informed Plaintiff that he was limited to a maximum of 24 months of benefits due to policy limitations for his mental illness condition.

On May 12, 2020, Unum Life informed Plaintiff that it would no longer pay Plaintiff long term disability benefits because he exhausted the 24 months of benefits payable to him for his mental illness.

On November 6, 2020, Plaintiff, by way of his counsel, submitted an administrative appeal of Unum Life's May 12, 2020 decision. On February 5, 2021, Unum Life upheld its May 12, 2020 determination.

On February 5, 2021, Plaintiff, by way of his counsel, sent correspondence to Unum Life citing "Department of Labor regulations governing ERISA claims" and advising of Plaintiff's position that Unum Life was prohibited from issuing an adverse benefit determination until it complied with the regulations for comment on additional evidence on appeal. Plaintiff's counsel cited 29 CFR 2560.503-1(h)(4)(i) and (ii) for his position. On February 8, 2021, Unum Life advised Plaintiff, through his counsel, that his claim for benefits predated the ERISA regulation referenced in his February 5, 2021 correspondence.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.,* 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000).

## Discussion

Count I of Plaintiff's Complaint alleges Defendant breached its fiduciary duty under 29 U.S.C. § 1133 because Defendant did not notify of, and give him an opportunity to respond to, the additional information it considered on his appeal. Defendant argues that the regulations upon which Plaintiff relies were not in effect at the time his claim for benefits was filed, and therefore, Count I fails as a matter of law.

ERISA requires that every employee benefit plan must establish a claims procedure. 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. The procedure must provide for adequate written denials of claims. 29 U.S.C. § 1133(1). An adequate written denial must provide the following information "in a manner calculated to be understood by the claimant:"

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; [and]

(iv) A description of the plan's review procedures and the time limits applicable to such procedures[.]

29 C.F.R. § 2560.503-1(g)(1)(i)–(iv); see *Chorosevic v. MetLife Choices*, 600 F.3d 934, 943-44 & n.9 (8th Cir. 2010). A plan administrator must also issue a written denial "within a reasonable period of time, but not later than 90 days after receipt of the claim by the plan." 29 C.F.R. § 2560.503-1(f)(1).

In addition to providing a plan participant sufficient notice of a denial of a claim, a benefit plan must also offer a "reasonable opportunity" for "a full and fair review" of the denial. In other words, it must allow for an administrative appeal. 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503-1(h). As part of the review procedure, a plan administrator must provide a claimant "at least 60 days following receipt of" a denial notice to appeal the determination. 29 C.F.R. § 2560.503-1(h)(2)(i). If the claimant timely files an appeal, the plan administrator must notify the claimant of the plan's decision on the appeal no later than 60 days after the claimant's request for review. *Id*. § 2560.503-1(i)(1)(i).

Plaintiff relies on the procedures outlined in 29 CFR §§ 2560.503-1(h)(4)(i) and 2560.503-1(h)(4)(ii), which require administrators to, respectively:

> [P]rovide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination (or at the direction of the plan, insurer or such other person) in connection with the claim; such evidence must be provided as soon as possible and sufficiently in advance on which the notice of adverse benefit determination on review is required to be provided . . . to give the claimant a reasonable opportunity to respond to that date.

CFR 2560.503-1(h)(4)(i).

[15]

> [P]rovide the claimant, free of charge, with the rationale; the rationale must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided. . . to give the claimant a reasonable opportunity to respond prior to that date.

CFR 2560.503-1(h)(4)(ii).

Defendant correctly argues that these subsections of the Regulations cannot provide the basis for Plaintiff's breach of fiduciary claim since they were not in effect at the time Plaintiff filed his claim for benefits.

On December 19, 2016, the Department of Labor ("DOL") published the current amended ERISA regulation in the Federal Register as a Final Rule, which included subsections (h)(4)(i) and (ii). 81 Fed. Reg. 92,316 (Dec. 19, 2016). In accordance with the Administrative Procedures Act, the effective date of the regulation was to be January 18, 2017, 30 days after publication. See *id*; 5 U.S.C. § 553(d). The applicability date of the regulation, however, was postponed until one year later, to January 1, 2018. See 81 Fed. Reg. 92,316 (Dec. 19, 2016) ("Applicability Date: This regulation applies to all claims for disability benefits filed on or after January 1, 2018."). The DOL delayed the applicability date "in order to provide adequate time for disability benefit plans and their affected service providers to adjust to it, as well as for consumers and others to understand the changes made." See 82 Fed. Reg. 47,410 (Oct. 12, 2017); 82 Fed. Reg. 56,560 (Nov. 29, 2017).

[16]

On October 12, 2017, the DOL proposed to further extend the applicability date of the amendments by 90 days, to April 1, 2018. See 82 Fed. Reg. 47,409-410 (Oct. 12, 2017) ("If this proposal is finalized, the amendments made on December 19, 2016, would become applicable to claims for disability benefits that are filed after April 1, 2018, rather than January 1, 2018.").

On November 29, 2017, the 90-day extension was adopted. The applicability date of the new amendments to claims for disability benefits filed on or after April 1, 2018. 82 Fed. Reg. 56,560 (Nov. 29, 2017). Further, Subsection (p)(4) of the amended regulation provides that claims filed between January 18, 2017 and April 1, 2018 are subject to the pre-2018 version of the regulation. See 29 C.F.R. § 2560.503-1(p)(4)("With respect to claims for disability benefits filed under a plan from January 18, 2017 through April 1, 2018, this paragraph (p)(4) shall apply instead of paragraphs (g)(1)(vii), (g)(1)(viii), (h)(4), (j)(6) and (j)(7). In setting forth procedures for the administrative review of claims filed between January 18, 2017 and April 1, 2018, subsection (p)(4)(ii) provides:

> (ii) The claims procedures of a plan providing disability benefits will not, with respect to claims for such benefits, be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures comply with the requirements of paragraphs (h)(2)(ii) through (iv) and (h)(3)(i) through (v) of this Section.

29 C.F.R. § 2560.503-1(p)(4)(ii).

Subsection (p)(4)(ii) exempts claims filed between January 18, 2017 to April 1, 2018 from certain of the requirements of subsection (h)(4), including the requirements found in subsection (h)(4)(i) and (ii).

Under ERISA, the date that a claimant requests benefits is the applicable date to determine what procedures apply. *See* 29 C.F.R. 2560.503-1(p)(1); *see also Lipford v. LA-Z-Boy, Inc.*, No. 18-CV-11365, 2019 WL 8220723, at *3 (E.D. Mich. Apr. 3, 2019)(finding that the plaintiff's claim was governed by the ERISA regulations in effect when the plaintiff filed his claim for benefits); *see also DiCamillo v. Liberty Life Assur. Co.*, 287 F. Supp. 2d 616, 625 (D. Md. 2003)(same). Since Plaintiff filed his claim on August 25, 2017, the provisions of Subsections (h)(4)(i) and (ii) do not apply.

Plaintiff's argument that even absent these subsections, Defendant was still required to allow him to consider and comment on the additional material considered on appeal of the denial is no more availing.

A "full and fair review" pursuant to the version of § 2560.503-1(h)(4) applicable to Plaintiff's claim does not require the claims administrator to provide the claimant with documents developed or considered during the administrative appeal in advance of the final determination. *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 895-96 (8th Cir. 2009) Indeed, other circuits that have considered this question have uniformly concluded that it does not.

*Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78, 87 (2d Cir. 2021), *cert. denied sub nom. Mayer v. Hartford Life & Accident Ins. Co.*, 212 L. Ed. 2d 13, 142 S. Ct. 1120 (2022); *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 436-37 (D.C. Cir. 2011);; *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1245-46, (11th Cir. 2008); *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1166-67 (10th Cir. 2007); *see also Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 310-11 (5th Cir. 2015); *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 502 (6th Cir. 2010); *Morningred v. Delta Family-Care & Survivorship Plan*, 526 F. App'x 217, 221 n.9 (3d Cir. 2013).

Under the applicable regulations, Plaintiff was not entitled to receive, and be given an opportunity to comment on, the additional evidence considered in the appeal of the denial of his claim. As such, Plaintiff's breach of fiduciary duty as pled is without merit. Defendant is entitled to judgment as a matter of law.

## Conclusion

Based upon the foregoing, Defendant is entitled to judgment as a matter of law on Count I of Plaintiff's Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on Count I, [Doc. No. 20 ], is **GRANTED**.

An appropriate judgment will be entered upon the resolution of the

remaining claim in this matter.

Dated this 13th day of March 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE